I apologize to my colleagues and to the council for the delay this morning. I was just pulled away by an emergency administrative matter that I had no choice but to deal with, so I regret the delay, but we will press on. I will forego the usual admonitions except just to remind you to stay in that microphone so that we can hear you well. First case to call up, Choi v. Univ. of TX Hlth Sci Ctr, Mr. Serkeel, you're up. May it please the court, counsel. My name is Martin Serkeel. I represent Jen, also known as Jean Choi, in a case against the Univ. of TX Hlth Sci Ctr. I have experienced the experience that when they retain an attorney, they're retaining a storyteller. I hope I'm able to tell Jean's story today as well as I would like, as well as he would like. I need to start off with a short, maybe humorous disclaimer. Last night we were staying at the La Pavilion, and about 1.30 in the morning, all the alarms go off. They're having a fire. So that by itself is a little discombobulated. About three hours later, we start hearing this knocking on the door right next to us, and this guy yelling, let me in, let me in. And evidently this poor soul at about 1.30 must have wandered off, went downtown, got some drinks, came back at 4.30. I don't think his wife would let him back in the room. So anyway, so if I'm a little bit off today, I ask for your apologies. And then of course the other thing we always have in a case like this, I'm here as appellant. I'd always rather be appellee. And I represent a dentist, and nobody really likes dentists. So we have a little bit of an uphill battle this morning. But that being said, we're here because we believe not only is this a case about the ADA in Section 504 of the Rehabilitation Act of 1973, but really even more simply it's a case about what standards you use on a motion to dismiss for 12b-6. And we believe, as the record reflects, the magistrate and later the district judge adopted findings that really do not follow those standards. And we believe we have pled sufficient facts at this juncture of the pleadings, which is a pleading stage, to be able to survive that motion to dismiss. Now, the cause of action for the ADA in 504 in this case has three different portions to it that we have argued. The first portion basically relates to the period where Mr. Choi was at the school, was bringing forward issues to various staff members. And in fact, staff members were wrecking various issues in him that they found troubling. And then it's our position, when those things occurred, there was a duty upon the school to interact with him. The Herrick case and the Taylor case very specifically say, when somebody brings something forward about a disability, there's a duty for the school, the Section 504 coordinator, in this case, Professor Segura. And when exactly did that happen? When did he inform the university about his... That's a very, very good question, Your Honor. And one of the things I'm going to do maybe a little bit more than usual is relate back to the record just because I have been a little bit off this morning. Well, he did it a number of times. When he entered the school in 2009, he spoke with Dean Segura about having some disabilities at the time. And what were they identified as? Come again, Your Honor. What specific disabilities or limitations did he notify the school that he was dealing with? I'm going to answer that question in a roundabout way. And let me tell you why. Well, it's your time. I will be direct about it. I will directly answer it, but I want to bring... That's exactly the point I want to speak to today in a broader sense. One of the things that the magistrate did and one of the things that... You know, I've asked you twice. If I were you, I'd answer the question. I'm going to answer it, Your Honor. Okay. I'm waiting for the answer. The issue is not the disability. The issue is... Why don't you tell us when they are? Because I tell you... Oh, I'm sorry. The first one was... Oh, time out. Yes, sir. What's going to happen is you're going to run out of time. And you're the appellant. Now, we're not going to tell you how to use your time, but you're going to have a red light. And, you know, I'm a little generous, but I'm not going to be generous if, you know, you're taking things. You can rest assured. We have read the briefs. We have looked at portions of the record. We've identified the law. We know those things. So the best thing you can do is really help us understand how it is you ought to prevail. And one of the issues is whether or not he notified them, how did he do it, et cetera, et cetera. So answer the question first because we all want to know the answer. Because if you don't get over that hump, you're not going to prevail. I understand, Your Honor. Thank you. Well, he first did it in 2009, Your Honor, when he spoke with Dean Segura about his difficulties in depression. She suggested that he see a doctor. And that's in the record, page 241. Later on, he also had brought it forward when Dean Parma said that he had a mental problem. And part of the issue there was her recognition that he had problems as well. And one of the things the case law does show, once again, is that when the staff recognize the person has a disability of some sort, in this case a mental or emotional one, they have a duty as well. I'm sorry, Your Honor. You said later on. When was that? That was during the process when he was in the third year, just prior to the time he was starting the remediation program. Is there something in the record that establishes that the hand-eye coordination problem is related to the ADD or the other mental disability, if there is some other mental disability? No, there isn't. And, in fact, it's our position, Your Honor, that that's really a pretext for the issue of the discrimination based upon mental health issues. It's our position, Your Honor, that the record reflects that Dean Parma said that this gentleman had a mental health problem. Dean Parma said that he had basically delusional kind of ideas and thoughts. So it's our position when she came forward and basically moved him out of the program, even though cognitively he was doing well and he was passing all his classes, there was never a test that he took that he failed hand-eye coordination. There was never a video taken of him failing hand-eye coordination. So, basically, it was our position he was run out of the school because he was a mental health disability. But I want to go back to the first question that Judge Clement asked me before we pass by too far. During the remediation process and as he was going through the appeal process, he brought it up to Dean Segura again, and he brought up that he was having some depression, he was having some anxiety, and, once again, he was having behaviors that they found troubling. This is after he had already been dismissed from the school. No, this is way before, Your Honor. You said the appeal program. Well, there was an appeal process. Maybe that's a good term of art. When he first was being removed from the program, the committee met, and the committee determined that he wasn't able to fulfill the requirements, and they passed him out. And then he had the ability to appeal that. So there was a couple times in this process when he was preparing for the appeal, he brought it before Judge Segura, he brought it before Dr. Segura, he brought it before Dr. Glass, he brought it before all these professors that he was having these issues. They all said to him, when you go to the committee for this appeal, you need to let them know about that. He brought a doctor's note. He let them know about it. Once again, the case law under Taylor and Katera is, once you bring these things forward, the duty falls upon the school to interact and develop an interactive process in how they're going to handle this disability and what accommodations and modifications are supposed to be made in the program to let him continue. Where in the record does it show that he disclosed the limitations from his ADD? There is no place in the record that he disclosed that. Well, doesn't he have to disclose the limitations so that then they can dialogue? Well, what were disclosed and what were self-evident in the record, and this I would use the term the inferences, once again in a 12B6 motion to dismiss, the issue are the inferences, and what are the natural inferences that flow from the facts in this case? The natural inferences in this case is they had a number of behaviors that they found troubling. They found the troubling that he couldn't concentrate. They found the troubling that he was late. They found the troubling that he needed more attention than other people in the program. Are you saying that the school was supposed to diagnose or assess what those inabilities might have been attributed to, as opposed to him having some affirmative duty to point out, I have this issue, but it's because of X. Is that what you're? No, not exactly, Your Honor. I'm sorry for not being more succinct on the issue. Once he brought forward multiple times, even when he first started at the school, that he had certain disabling conditions. First it was ADHD. Then it was depression. Then it was anxiety. Then there was learning disability. But those things are just diagnostic terms. The real issue are what are the behaviors that set him apart, and what were the behaviors that were of concern to Dr. Parma and others? The issue, in due respect, is not to tie a particular diagnosis to a particular request, but that he brought forward concerns about his disabilities, his behaviors. I would submit to you that when we go back and we read the briefs, instead of looking at diagnoses, we look at behaviors, because it's behaviors that are more telling. How do they know the behaviors are related to his disabilities? Go ahead. You're absolutely correct. But the problem at the pleading stage is I don't have to prove causation. All I have to show at the pleading stage is that there's an inference that those things are connected, and they clearly were. But they have to figure out that ADD or depression causes this can't concentrate and keep up. They have to figure all that out and then decide they're going to confer with him. Is that what you're saying the law is? No, Your Honor. They don't have to figure that out. The case law under Catera and Taylor says it's an interactive process. But how do they know to interact about it? That's their duty. But they don't know to interact about it that it's related to a disability unless he tells them that there's something going on with the disability. Judge Stewart was talking about time. But the record reflects that he brought forward multiple times with multiple professors, particularly during this remediation stage, during the preparation. All right. Let me stop you there. All right. He's poured out on a 12B6, which is a failure to state a claim upon which relief can be granted. All right. What are you saying in your pleading? I understand we had notice pleading. We all know what the case is saying. But tell us why you say your pleading under 12B6 fits what's needed to make this cause of action. Don't digress back into where you were. But, I mean, explain because that's why you're here. So tell us how does the complaint articulate sufficiently that you stay in court? The professor that he met with before they went into it. I said how does the complaint not hold it. Listen to the question. How does the complaint, the federal complaint, file? That's what you poured out on the 12B6. We get it, you know, about the backdrop. And we're not trying to pull you from there. But we've got to understand what your argument is. Just articulate for us how does what you've alleged in the complaint satisfy 12B6 in terms of your client? There are facts in the complaint that show that he had a disability, that he brought forward information to powers that be that he had that disability, that once that occurred there was an interactive process that never occurred. He never got the accommodations or the modifications that he would otherwise have received. I'm going to move on to my two other causes of action within that, Your Honor, because I, as you say, only have two to three minutes. And believe it or not, we spent most of the time on what I would say may be the weakest part of our allegations, the strongest part of the next two parts. Well, most people start their argument with the strongest thing they got. I mean, you know, just from Shreveport. But, I mean, most people, you know, you start off with the strong suit. Anyway, it's your argument. Go ahead. Well, here we are. The other thing that is that many, the record reflects that the school gives permission to people who have problems in a particular class to take a class over. The school's rules and policies and practices give students the ability to repeat an entire year. They give the ability for people to get special programming to do that. And that's what happened to your client. They allowed him to repeat an entire year. At the first year, they did. But at the remediation process, before you can remove someone from school, you're supposed to give them the ability to be on probation, to take another class, to have some things done that he never received. And it's our position that the record clearly reflects he never received what his non-disabled peers received. And, in fact, the state never answered that particular argument at all. Last is the argument that we have, which we think it facially speaks for itself, is that the school has a policy that you have to complete the dentist program in six years. During the appeal process, we got a letter from the dean that says even if we let you back, you would take more than six years to complete the program. And it's our position that a one-size-fits-all program limited to six years violates the ADA in Section 504. In fact, we have case law that was provided in our brief that shows another dental school case in a different part of the country had an eight-year period. What's the normal period? Is it like med school? Is it a four-year period? The dental school has a six-year program, Your Honor. I thought it was a four-year program. If you go through normally and you don't repeat a year and you don't try to repeat another year. I misunderstood the question. Correct. I think if you start and you go straight through without any interruptions, it's four years. But I think the way the record reflects is that they have a specific limitation. If you start this year, you only have six years to complete regardless. All right. Thank you, sir. You reserved some time for rebuttal. I did, Your Honor. Thank you. We'll hear now from Ms. Cochran-McCall. May it please the Court? I'm Amanda Cochran-McCall on behalf of the appellees in this case. This court should affirm the district court's dismissal of Mr. Choi's ADA and Rehab Act claims for two reasons. First, the pleadings in this case fail to show any facts that indicate that Mr. Choi is actually a qualified person with a disability. Second, the facts as pledged show that the university didn't actually know he had a disability until such a late point that the only options for accommodations were not reasonable accommodations but fundamental alterations to the dental schools program. Could we go with that six-year issue? That seems to be the most troubling part of your side of the case to me, that if he truly did have a disability, that that might be a reasonable accommodation that he could take longer. And so continue when even if we think that? Your Honor, first I'd like to clarify in answering that question the fact that the program is a four-year program. So yes, the school does have a policy that students are permitted up to six years. Now, that six-year period has built into it a two-year window where the school can make accommodations for whatever reasons as might be necessary. And so that type of requirement is an academic determination that the federal regulations and the federal law allow a university to make. And they are not required to make reasonable accommodations to that type of academic determination. Okay. Can you win even if we determine that it is a possible viable claim to accommodate beyond the six years? Can you still win the case? Yes, we can still win the case. How? Because he's not an eligible person, a qualified person with a disability. So we wouldn't have to reach that issue? Correct, Your Honor. That's true. So turning to the first issue, Choi's pleadings fall short of showing or alleging that he's a qualified person with a disability. The burden on Choi was to allege facts that show that he could meet the first element of a prima facie case of either of his disability claims, and he failed to do that. He had to plead facts that show he could perform the essential functions of being a dental student. He was in the third-year coursework. This is a clinical component where the students are actually treating patients. And he alleges that professors provided various complaints about his performance in addition to a complaint that he lacked hand-eye coordination. Now, there's no doubt that to be a dentist, you have to have hand-eye coordination. There's no doubt that when a dentist is in a patient's mouth, it matters that they can do the work quickly and accurately. And he notes that he had sufficient hand-eye coordination for his first two years' courses, but he never alleges that he actually had sufficient hand-eye coordination to do the clinical component that was necessary in his third year. In fact, he alleges— What's the clinical component? Pardon me, Your Honor? To do what? The clinical component? Is that what you said? Yes, Your Honor. The specific course was entitled Clinical Patient Management, and it's a rotation where the dentists are treating actual patients that present with various types of issues that require treatment. And, in fact, he pleads— Instead of saying that he actually was qualified to do that or had the necessary hand-eye coordination, what he pleads instead is that the school could have tested him in the first or second year for that hand-eye coordination and saved him the money of incurring the debt related to those first two years of school. I thought he said he did have satisfactory and that it was all a pretext. He did say he had adequate hand-eye coordination for the first two years. He never alleges that he actually had necessary hand-eye coordination for that clinical component. Instead, he alleges that it was a difficult and slow learning process for him in his pleading and that he struggled with it from the very beginning. Nor does he allege any facts that tie this shortfall to his disability. And I believe you were asking questions about that earlier. There's nothing in the pleading that ties his lack of hand-eye coordination to a disability, and that's significant because the school is only required to provide reasonable accommodations for limitations related to a disability, and there's nothing in the pleading. It's devoid of any facts tying those two things together. And what would a specific accommodation have been if he was recognized to have inadequate hand-eye coordination? What would the accommodation be? I mean, it seems like you're either a dentist or you aren't. Your Honor, I agree with that assertion. You know, he doesn't identify any accommodation that would allow him to overcome that shortfall, and, you know, there's nothing in the record that suggests there was a dialogue about that, so I'm unaware of what sort of accommodation that might be. And for these reasons, this court should affirm the district court's dismissal of his claims because he has failed to plead facts that show he's a qualified individual with a disability. Did counsel attempt toóI mean, it's probably in here, and I may have missed it. Was there any request to amend the complaint or, you know, the usual go-around for you? Normally we get a 12B6. You know, there's an offer to amend, and maybe it is, maybe it isn't, and, you know, it's bounced later. And again, I apologize, it's probably here somewhere. But was there an attempt to amend the complaint, and the court didn't allow, or were we just dealing straight on with what was filed? Yes, Your Honor, there were multiple amendments to the complaint in this case. So there was the initial complaint, the first amended complaint, and the live complaint was the second amended complaint when the court finally made its determination at the district level. So we've had multiple opportunities to cure, if you will. Yes, Your Honor. Turning to the second issue that Judge Elrod indicated might be the most problematic in terms of, you know, is it a violation of law for the university just to have this six-year requirement? I think it's important to put that in context and to take a step back because there were a lot of questions about when the university was on notice that he had a disability. And reviewing the pleadings in the light most favorable to the plaintiff, the first point at which he indicates to anyone at the university he has a disability and might want an accommodation is on October 18, 2011. Now, it is true that earlier on in 2009 and 2010 he was diagnosed with both depression and ADD. But the missing step there is this is a mental disability, and the case law tells us that when a disability's limitations are not open and obvious, the onus is on the person requesting, not the university, to divine out what might be the appropriate accommodation for someone. We don't go around assuming that everyone with ADD or depression automatically needs an accommodation. And here, nothing in the facts indicate that he ever communicated that either of those disabilities at the time he was diagnosed caused any limitations that he needed accommodations for, and therefore there was no interactive process. But it's because of Choi's failure to begin that interactive process, and the onus was on him. He can't improperly shift the burden to the university to divine out both that he had a diagnosis and attendant limitations. And while his petition has a laundry list of possible accommodations that might be appropriate for individuals that suffer from those disabilities, he never actually indicated he might need any of those. And he entered school in 2008, and it wasn't until 2011, after he had already unsuccessfully began the clinical rotation, given an opportunity to remediate that, and was being told he was going to be dismissed from the program because he lacked hand-eye coordination and couldn't successfully complete that, that he finally said, hey, I have a disability. And at that point, the only options for the university were to lower its eligibility requirement, meaning let a student that lacks hand-eye coordination continue on in the program, or create a waiver to the graduation requirement. Graduation time periods have the open and obvious purpose of creating an environment that is both rigorous and disciplined for students in a higher professional education setting. And it's important that the university have the discretion to set those type of parameters, because it matters. These are individuals that are going to treat patients. That type of academic determination that the university is only interested in graduating students that can actually complete the rigorous program within that six-year time period, which again I'll note provides an additional two-year option for the university to still make accommodations as appropriate, is exactly the type of academic determination that the regs and the law permit a university to make. Here, this court should affirm the trial court's dismissal also on the basis that the only accommodations available were fundamental alterations. They were not reasonable accommodations, because Choi waited until such a late time to notify the university that he had a disability. And I will point out, even at that time, he still didn't. He still doesn't allege that he identified the limitations at that point, or even made a request for any type of specific accommodation. And if we look at the pleading, and we look at the injunctive relief sought, it's very broad, and what he had pled is he wants to be reinstated into the school to be permitted to continue in the program. That's a bit troubling from a policy perspective, because what is he asking? Is he asking that he be permitted for one additional year, and maybe we'll see if he can cut it? Is he asking for unlimited chances to complete the program, whether he fails that third-year rotation three, four, five times? That can't be the answer. The answer has to be that our professional university programs have to be able to set meaningful parameters about the rigor and the discipline required to graduate. If there are no further questions, I have nothing further. Thank you. I appreciate it. Mr. Secure, do you have rebuttal? Sir. On the otherwise qualified issue, the magistrate, in her recommendation and report, said that Choi was otherwise qualified, meaning he had the ability to take the course and otherwise benefit from accommodations in the hand-eye coordination part of the program or any other part of the program. Also, there are a number of inferences throughout the records that shows he also was otherwise qualified. When he got advice from Secure on the 26th as how to approach the committee, the inference is that if he got what he had asked for, he was otherwise qualified. How do you distinguish the EEOC v. Chevron Phillips chemical company case that says where the disability and necessary reasonable accommodations are not open, obvious, and apparent, the duty is on the employee to reasonably identify the disability and resulting limitations and to suggest reasonable accommodations? Actually, very easily, Your Honor, because in this case they were open and obvious. Would you speak up? They were open and obvious. Dr. Parma specifically said that she thought he had mental problems. Dr. Parma specifically said that she thought he was delusional in seeing things. The case that's really more on point for this Court, in my estimation, Your Honor, in justices is the Katera case. The Katera case was cited by the Attorney General's Office very, very specifically, very, very similar. And there, the admonishment that the Court had and the dicta in that Court analysis was that a person brought something forward to the school, there was information that the person had a disability, they had some behaviors that were interfering with their ability to proceed in the course. Once that occurred, there was an interactive process that was supposed to start, and in that case, it was an employment case, they fired the person before the interactive process could begin. And that's exactly what happened in this case, Your Honor. We had that case. We discussed that case yesterday. Yes. But that doesn't answer the question. Okay. Assuming that . . . I guess your answer was that disability is delusionalness, to being delusional? Meaning . . . And so, if you're delusional, how in the world does the person know what the necessary reasonable accommodation would be to someone delusional? You said, oh, it's so easy to distinguish the case. I don't understand how the employer or the school knows what to do with someone who's delusional to accommodate them to be able to do the program. And you're the one who brought up being delusional. I partially agree with you. But the issue at the pleading stage is that we brought forward facts and inferences that naturally flow from the facts, that he let everyone know that he had a disability, yes. That he was delusional? The professor said that. Right. Did he say, I'm delusional and you need to accommodate me? Is that in the record? No. But I do respect your honor. I don't really think that's the standard at this stage. Let me move on to . . . What was the factual background for her saying that? Wasn't there some allegation that he was saying that she was pursuing him aggressively or sexually or hitting on him? Yeah. Well, that's probably delusional. Fair enough, your honor. Let me move on to the issue that you brought up earlier about the program, the six-year limitation on the program. Whether that's a fundamental change or not, that's not in the record. There's nothing in their record that says there's something particularly holy about six-year dental programs. Now, that may be true if we go forward on to a motion for summary judgment and there's argument that such a change would require a fundamental change and their programs move from six to seven or eight. But there's nothing in the record at this point. In fact, if we go back and look at their pleadings on that particular topic, every single case, and I say every single case cited, and there's a litany of them, are all motion for summary judgment cases. And what that tells me, and I hope it tells this court as well, is that on that particular issue as well as the others, it's not ripe yet to be dismissed, that there are parts of the case that still need to be developed, and that's what motions for summary judgment are. That's what discovery is for. That's what depositions are for. That's what this case deserves. It deserves to be able to go forward and have its proverbial day in court again. We ask that it be sent back to the district court for further work based upon your decision. I don't know if there's time for a few more questions. I'd be happy to answer them. Thank you, sir. I believe we have your argument. Thank you.